UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry F. Dean,

        Plaintiff,                            Court File No. 19-cv-3186 (JRT/LIB)

v.

                                       **REPORT AND RECOMMENDATION**

Nancy Johnston and Laurie Severson,

        Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 19], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 13]. On April 21, 2020, the Court established a briefing schedule for Defendants' Motion to Dismiss Plaintiff's Complaint. (Order [Docket No. 20]). On May 27, 2020, the Court took Defendants' Motion to Dismiss Plaintiff's Complaint under advisement on the Parties' written submissions. (Id.).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss Plaintiff's Complaint, [Docket No. 13], be **GRANTED**.

**I.    BACKGROUND AND STATEMENT OF FACTS[1]**

Plaintiff Larry F. Dean, ("Plaintiff"), is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Compl. [Docket No. 1] ¶ 1). Plaintiff resides at MSOP's Moose Lake facility.

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiff. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

(See, Id. at 15). Plaintiff alleges that after he was moved from Tier 3 to Tier 2 in the MSOP's "Levels System," his vocational programming privileges were taken so he could not work, and he was forced to send away his Xbox 360 gaming system, Xbox 360 controllers, and Xbox 360 games (together, the "Xbox"). (Id. ¶ 10).

According to Plaintiff, the Levels System:

> is a behavior modification program which regulates virtually every dimension of each Clients' life at MSOP. It controls visitation, receipt of packages, bedtime, personal belongings, recreation, and many other factors of daily existence. These restrictions on normal privileges are gradually lifted as a client progresses through the system. A minimum amount of time must be spent on each level before promotion. In order to advance in the system, Clients must avoid any disciplinary infractions and meet certain minimum levels of performance in designated areas which the MSOP staff evaluates each client. The evaluations are based on the subjective judgment of staff. As a practical matter, the evaluations are *pro forma* and one's ability to progress through the system is dependent on a single, overriding factor: the ability to avoid disciplinary write-ups/infractions/BERS.

(Id. ¶ 9).

On May 21, 2019, Plaintiff received a "Tier Level Request Notification" from Defendant Severson. (Id. ¶ 11). The stated purpose of notification was to inform Plaintiff that his Tier Level had been changed from Tier 3 to Tier 2. (Id.). The reason given for the Tier Level change was that Plaintiff had "received multiple Behavioral Expectation Reports (BER) for significant behaviors that have had a negative impact on the therapeutic environment and [Plaintiff's] community including Lying and Misrepresentation, Assault, Disorderly Conduct, and Threatening Others." (Id.). The notification also informed Plaintiff that while on Tier 2, Plaintiff would have several specified expectations, including handing in his Xbox,[2] and that for Plaintiff to be increased to Tier 3, he would have to engage in several specified behaviors for a minimum of 60 days. (Id.).

---

[2] The notification also informed Plaintiff that while on Tier 2, he would have a 9:00 pm curfew that required him to be in his room with the door closed by that time, his movement opportunities would be supervised and he would have to check in at the desk when going to and from scheduled and Tier 2 events, and he would have to sign up at the staff station for the computer use. (Id.).

2

Plaintiff was not afforded a hearing prior to being reassigned from Tier 3 to Tier 2. (Id. ¶¶ 17–18). Moreover, the reassignment was final. (Id.). Plaintiff was not allowed to appeal his Tier Level reassignment, nor was he allowed to use the MSOP grievance process to challenge his Tier Level reassignment. (Id.).

As a result of his reassignment, Plaintiff was forced to send his Xbox out of MSOP's Moose Lake facility. (E.g., Id. ¶ 10). Plaintiff was informed that once he re-obtained and retained Tier 3 status for 90 days, "he would then be allowed to re-purchase [an] all new gaming system, controllers and games." (Id. ¶ 17). Plaintiff would not be allowed to have his prior Xbox sent back into the Moose Lake facility. (Id. ¶ 10 n.2).

Based on these allegations, Plaintiff filed a Complaint with this Court on December 27, 2019. [Docket No. 1]. Plaintiff named as Defendants Nancy Johnston, CEO of MSOP, and Laurie Severson, Unit Director. (Id.). Liberally construing Plaintiff's pro se Complaint, ostensibly pursuant to 42 U.S.C. § 1983, Plaintiff asserts claims against Defendants in both their individual and official capacities for violating his federal right to be free from illegal search and seizure under the Fourth Amendment, as well as, his procedural due process rights and equal protection rights under the Fourteenth Amendment. (Id.).

As relief, Plaintiff requests that Defendants be enjoined from engaging in further constitutional violations and that the Court award him monetary damages.[3] (Id.).

## II. DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT. [DOCKET NO. 13].

Defendants move the Court for an Order dismissing Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and/or

---

[3] Per his Complaint, "Plaintiff seeks monetary and compensatory damages in Defendants' individual capacity only," and "Plaintiff seeks declaratory and injunctive relief in Defendants' Official capacity only." (Id. ¶ 2).

3

for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss [Docket No. 13]). Specifically, Defendants argue that Plaintiff fails to plausibly state a procedural due process claim, an equal protection claim, or a Fourth Amendment claim. (See, Mem. in Supp. [Docket No. 16], at 6–11). Defendants further argue that Plaintiff fails to allege any personal involvement by Defendant Johnston and that both Defendants are entitled to qualified immunity.[4] (Id. at 11–14).

### A. Standard of Review

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of facts, which, if proven true, would entitle the plaintiff to legal redress against the named defendants under an established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). In short, "the complaint must allege facts, which if true, state a claim as a matter of law." Id. When deciding a Rule 12(b)(6) motion to dismiss, a court generally may not consider materials outside the pleadings and assumes all facts alleged in the complaint are true, construing all reasonable inferences from those facts in the light most favorable to the complainant. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008); Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

---

[4] Despite purporting to move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants do not present any argument for why this Court lacks subject matter jurisdiction. Plaintiff's Complaint clearly states that he seeks monetary damages against Defendants in their individual capacity only and that he seeks injunctive relief against Defendants in their official capacity only. Accordingly, this Court finds that it has subject matter jurisdiction over the present matter. See, e.g., Schumpberger v. Osborne, No. 16-cv-78 (SRN/TNL), 2019 WL 1118912, at *4 (D. Minn. Jan. 25, 2019), report and recommendation adopted by 2019 WL 927322 (D. Minn. Feb. 26, 2019) (citation and quotations omitted) ("A plaintiff may maintain an action against a government official if the complaint seeks only injunctive or prospective relief. Declaratory judgments and injunctions are the types of prospective relief that can be sought in federal court from state officials sued in their official capacities, notwithstanding the state's sovereign immunity.").

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikcon v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see also, Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted); see also, Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

### B. Analysis

Plaintiff brings his claims under 42 U.S.C. § 1983. (Compl. [Docket No. 1], at 25–27). To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege a] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."). In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Id.

Each of the alleged violations of Plaintiff's constitutional rights is based on his assertion that the MSOP's Levels System was "unconstitutionally applied to Plaintiff with no due process, and violate[s] both his Fourth Amendment (illegal search and seizure) and Fourteenth Amendment (Equal Protection and Due Process) rights under the United States Constitution." (See, e.g., Compl. [Docket No. 1] ¶ 8). At the heart of each of Plaintiff's claims is his own conclusion that the MSOP's Levels System as applied to Plaintiff has no penological justification, and as a result, Plaintiff's constitutional rights were violated when Defendants forced him to send his Xbox away from the Moose Lake Facility pursuant to MSOP policy under the Levels System.

"The stated goal of the Levels System . . . is 'to promote personal growth, a positive attitude and socially acceptable behavior.'" (Compl. [Docket No. 1] ¶ 10). Advancement through the Levels System is dependent on one's "ability to avoid disciplinary write-ups/infractions/BERs." (Id. ¶ 9). Notably, Plaintiff does not challenge his receipt of the Behavioral Expectation Reports, nor does he dispute that he engaged in the behaviors that led to the Behavioral Expectation Reports. (See, Compl. [Docket No. 1]). Nonetheless, Plaintiff makes numerous conclusory assertions that the Levels System is a punitive, counter-rehabilitative, punishment-oriented system that has no penological justification. (See, Id.). For example, Plaintiff acknowledges that "'maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights,' [but he offers only his own conclusion that] the Levels System does not advance these goals and impedes this achievement." (Id. ¶16). Plaintiff provides no factual allegations in his Complaint to support this bare, conclusory assertion. (See, Id.).

Similarily, Plaintiff first acknowledges that "the [Levels] system was implemented to deal with problems of institutional control and security caused by a small number of incorrigible clients" but he then expresses his subjective conclusion that "[t]he imposition of the Levels System on the entire population . . . can be proven to be an exaggerated response, which is counter-productive in terms of the behavior of the average client." (Id. ¶ 13). Yet, Plaintiff here too provides no factual allegations from which this Court can plausibly conclude that the implementation of the Levels System at the MSOP was an exaggerated response.

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption

7

of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. Plaintiff's numerous assertions regarding the arbitrary and unjustified nature of the Levels System are mere legal conclusions and, as such, they do not satisfy Iqbal or Twombly. See, Barton v. Taber, 820 F.3d 958, 963–64 (8th Cir. 2016) (accepting facts but not mere legal conclusions alleged in the complaint as true for purposes of a Rule 12(b)(6) motion); Walker v. Barrett, 650 F.3d 1198, 1209 (8th Cir. 2011) ("[L]egal conclusions, without any supporting factual allegations, are insufficient to survive a motion to dismiss.").

Even in liberally construing Plaintiff's pro se Complaint, taking what facts there are pled within as true, and making all reasonable inferences in Plaintiff's favor, his factual allegations themselves related to the Levels System plainly indicate that its purpose is to promote and maintain institutional security by granting privileges to MSOP patients that demonstrate acceptable behavior by adhering to MSOP policies. (See, e.g., Compl. [Docket No. 1] ¶¶ 9–10, 13, 16). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Baribeau v. City of Minneapolis, 596 F.3d 465, 483 (8th Cir. 2010) (quoting Bell v. Wolfish, 441 U.S. 520, 546 (1979)). "We 'must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of institutional security.'" Arnzen v. Palmer, 713 F.3d 369, 373 (8th Cir. 2013) (quoting Beaulieu, 690 F.3d at 1029); see also, Beaulieu v. Ludeman, 690 F.3d 1017, 1029 (8th Cir. 2012) (quoting Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 328 (2012)) ("[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer

to their expert judgment in such matters."); Semler v. Ludeman, 2010 WL 145275, at *19 (D. Minn. Jan. 8, 2010) ("The Government's interest in maintaining security at institutions providing the containment and treatment of mental patients has been held crucial to safety as well as to treatment.").

Therefore, as a preliminary matter, this Court finds that Plaintiff has not pleaded factual allegations that plausibly indicate the MSOP's Levels System has no justifiable penological justification. To the contrary, Plaintiff's own assertions in his Complaint acknowledge that the Levels Systems relates to the need for institutional security.

### i.    Plaintiff's Fourth Amendment Claim

Plaintiff alleges that Defendants violated his right to be free from unreasonable search and seizure under the Fourth Amendment. (Compl. [Docket No. 1], at 18). Specifically, Plaintiff alleges that Defendants violated his right to be free from unreasonable seizure by requiring him to send his Xbox out of the MSOP's Moose Lake facility "because of an isolated incident of misbehavior." (See, Id. ¶ 17).

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "Involuntarily committed civil detainees have a Fourth Amendment right to be free from unreasonable searches and seizures similar to that of pretrial detainees." Evenstad v. Herberg, 994 F. Supp. 2d 995, 1002 (D. Minn. 2014) (citing Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)); see also, Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Beaulieu v. Ludeman, 690 F.3d 1017, 1028 (8th Cir. 2012)).

"A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." See, Bealieu, 690 F.3d at 1034 (quoting Pepper

9

v. Village of Oak Park, 430 F.3d 805, 809 (7th Cir. 2005)). "To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Id. at 1034–35 (quoting Baribeau v. City of Minneapolis, 596 F.3d 465, 483 (8th Cir. 2010)).

Here, Plaintiff "received multiple Behavioral Expectation Reports (BER) for significant behaviors that have had a negative impact on the therapeutic environment and [Plaintiff's] community including Lying and Misrepresentation, Assault, Disorderly Conduct, and Threatening Others." (Compl. [Docket No. 1] ¶ 11). As a result, he was moved from Tier 3 to Tier 2. (Id.). Pursuant MSOP policies, Plaintiff was not permitted to continue to possess the Xbox after being moved to Tier 2, and he was required to send the Xbox out of the MSOP's Moose Lake facility. (See, e.g., Id. ¶¶ 10 n.2, 11).

In Beaulieu, the Eighth Circuit found that requiring MSOP patients to send their 20-inch television sets away from the MSOP facility amounted to a seizure under the Fourth Amendment. Beaulieu, 690 F.3d at 1034. Similarly, this Court finds that requiring Plaintiff to send his Xbox away from the Moose Lake facility amounted to a seizure. However, "[t]he Fourth Amendment proscribes only *unreasonable* searches and seizures." Banks, 2012 WL 13094534, at *9 (emphasis in original); see also, Ivey v. Mooney, No. 05-1215 JMR/AJB, 2006 WL 618110, at *5 (D. Minn. Mar. 9, 2006) (citing Bell v. Wolfish, 441 U.S. 520, 558 (1979)) ("Though prisoners and others who are detained retain some Fourth Amendment rights, searches and seizures are unconstitutional only to the extent they are unreasonable.").

Defendants contend that "requiring Plaintiff to send his Xbox out of the facility was not unreasonable" because "Plaintiff failed to comply with behavioral standards at MSOP" which

10

caused his Tier Level to be reduced below the level required to possess a video game system. (See, Mem. in Supp. [Docket No. 16], at 10). This Court agrees in that the allegations in Plaintiff's Complaint do not plausibly support a contrary conclusion.

Even liberally construing Plaintiff's pro se Complaint, he fails to plausibly allege that Defendants violated his Fourth Amendment rights. As explained above, the factual allegations in Plaintiff's pro se Complaint acknowledge that the Levels System is justified by the need for institutional security. Plaintiff was moved from Tier 3 to Tier 2 because he received multiple Behavioral Expectation Reports. Pursuant to MSOP policy, MSOP patients on Tier 2 are prohibited from possessing a video game system. Plaintiff does not dispute that his possession of the Xbox was prohibited by MSOP policy while he was on Tier 2, nor does Plaintiff dispute that he was on Tier 2 when the Xbox was seized. Rather, Plaintiff challenges the system and procedures by which he was moved from Tier 3 to Tier 2. (See, Compl. [Docket No. 1]). As such, Plaintiff fails to allege a cognizable Fourth Amendment violation, and his allegations are better addressed in the context of his Fourteenth Amendment procedural due process claim.

Plaintiff has not plausibly alleged that the seizure of his Xbox was unreasonable because Plaintiff was on Tier 2 and, pursuant to MSOP policy, was prohibited from possessing the Xbox at the time that it was seized. The fact that the seizure itself was not unreasonable is emphasized by Plaintiff's own allegations that one of the stated goals of the Levels System is to promote socially acceptable behavior, and Plaintiff does not dispute in his Complaint that he was moved to Tier 2 due to multiple, undisputed behavioral infractions which negatively impacted the therapeutic environment. See, Beaulieu, 690 F.3d at 1035 (finding no unreasonable seizure of patient's television where MSOP patients were required to send their televisions out of an MSOP facility pursuant to an MSOP policy); Wickner v. Rose, No. 12-1397 (DWF/LIB); 2016 WL

6915508, at *9 (D. Minn. Oct. 19, 2016), report and recommendation adopted by 2016 WL 6916802 (D. Minn. Nov. 22, 2016) (finding the plaintiff failed to plausibly allege a Fourth Amendment violation where he "fail[ed] to allege any specific facts as to why the allegedly confiscated items should not have been determined to be contraband or prohibited items under the media policy then in place"); Banks, 2012 WL 13094534, at *7–9 (finding that the seizure of items which were prohibited by MSOP's media and contraband policies was not unreasonable); Ivey v. Mooney, No. 05-1215 JMR/AJB, 2006 WL 618110, at *5 (D. Minn. Mar. 9, 2006) (finding seizure of prohibited documents was not unreasonable).

Therefore, the Court finds that Plaintiff could not obtain relief on his Fourth Amendment claim as Plead in his Complaint, and as such, the Court recommends **DISMISSING without prejudice** Plaintiff's Fourth Amendment claim for monetary damages against the named Defendants in their individual capacities, as well as, his Fourth Amendment claim for injunctive and declaratory relief against Defendants in their official capacities.

### ii. Plaintiff's Fourteenth Amendment Claims

Plaintiff also alleges that Defendants violated his procedural due process rights under the Fourteenth Amendment.[5] (Compl. [Docket No. 1]). Specifically, Plaintiff contends that his

---

[5] Plaintiff's Complaint appears to also assert that Defendants violated his equal protection rights under the Fourteenth Amendment. (Compl. [Docket No. 1]). Specifically, Plaintiff contends that "the Levels System violates the equal protection clause due to disparities in allocation of individual privileges." (Id. ¶¶ 15–16). However, "[t]he Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not run afoul of the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly." Am. Family Ins. v. City of Minneapolis, 836 F.3d 918, 921 (8th Cir. 2016). Therefore, in order to prevail on an equal protection claim, Plaintiff must demonstrate that persons who are similarly situated are treated differently by Defendants. See, Moreland v. United States, 968 F.2d 655, 660 (8th Cir. 1992); Beaulieu, 2008 WL 2498241 at *12 ("Absent a threshold showing that plaintiffs are similarly situated to those who allegedly receive favorable treatment, plaintiffs do not have a viable equal protection claim."). Plaintiff has failed to do so. He merely generally alleges that Defendants violated his equal protection rights because of disparities in the privileges allowed to MSOP patients on each of the different Tier Levels. (See, Compl. [Docket No. 1] ¶¶ 15–16; see also, Plf.'s Response [Docket No. 21], at 6). However, Plaintiff does not allege that he was treated differently than any other MSOP patient on the same Tier Level as himself. (See, Compl. [Docket No. 1]). Nor does Plaintiff allege that any other MSOP patient on Tier 2 was permitted to possess a video game system. (See, Id.). The unidentified MSOP patients who are allowed gaming systems to whom Plaintiff generally compares himself are on different Tier Levels than Plaintiff, hence Plaintiff is not similarly situated to them. Because

procedural due process rights were violated because he was not afforded a hearing before he was moved from Tier 3 to Tier 2 and required to send his Xbox away, and also because there was no appeal process through which Plaintiff could challenge the Tier Level reassignment and resulting loss of his Xbox. (Id. ¶¶ 11, 17–18).

> "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant[s] deprived him of such an interest without due process of law." "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" "The fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner.'"

(citations omitted.) Schmidt v. Des Moines Public Schs., 655 F.3d 811, 817–18 (8th Cir. 2011).

We need reach the question of what process is due only if the Plaintiff establishes a constitutionally protected liberty interest; where no liberty or property interest is identified, a procedural due process claim necessarily fails. See, Bealieu v. Ludeman, 690 F.3d 1017, 1047 (8th Cir. 2012) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). If Plaintiff does have a protected liberty or property interest, the Court "then consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in an erroneous deprivation, and the [MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Senty-Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (citing Mathews v. Eldridge, 424 U.S. 319, 332–35 (1976)).

"Neither the Supreme Court nor [the Eighth Circuit] has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the

---

Plaintiff has failed to show that he is similarly situated to any other MSOP patient on Tier 2 with greater privileges than himself, his equal protection claim necessarily fails. See, e.g., Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection."). Accordingly, the Court finds that Plaintiff could not obtain relief on this claim as plead in his Complaint, and as such, the Court recommends **DISMISSING without prejudice** Plaintiff's equal protection claim for monetary damages against the named Defendants in their individual capacities, as well as, his claim for injunctive and declaratory relief against Defendants in their official capacities.

Matthews balancing test." Senty–Haugen, 462 F.3d at 886. Since Plaintiff has been civilly committed to state custody, his liberty interests are considerably less than those held by members of free society. Id. However, compared to a prison inmate, Plaintiff is entitled to "more considerate treatment and conditions of confinement." Id. (quoting Youngblood v. Romeo, 457 U.S. 307, 322 (1982)). Nevertheless, reference to cases involving due process claims in the prison context provide guidance in analyzing the due process claims of a civilly committed individual. In the prison context, for example, a change in the condition of confinement implicates a liberty interest only when the action creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

Here, the Court will first consider whether Plaintiff's due process rights were violated when he was moved from Tier 3 to Tier 2 under the MSOP's Levels System.

Defendant Severson notified Plaintiff in writing of the reasons he was being moved from Tier 3 to Tier 2. (Compl. [Docket No. 1] ¶ 11). Specifically, she informed Plaintiff that he was moved because he had "received multiple Behavioral Expectation Reports (BER) for significant behaviors . . . including Lying and Misrepresentation, Assault, Disorderly Conduct, and Threatening Others." (Id.). Plaintiff was further informed that he would remain on Tier 2 for a minimum of 60 days before his increase to Tier 3 would be considered. (Id.). While on Tier 2, Plaintiff would not be permitted to possess his Xbox, he would be subject to a curfew that required him to be in his room with the door shut by 9:00 p.m. each night, he would be required to sign up for computer use at the staff station, and his movements would be monitored and he would have to check in at the desk when going to and from scheduled and Tier 2 events. (Id.). In addition, Plaintiff's vocational privileges were taken, and he was not permitted to work. (Id. ¶ 10).

As set forth above, "[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake." Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997); see, Schmidt v. Des Moines Public Schs., 655 F.3d 811 (8th Cir. 2011). In the context of prisons, a liberty interest is only implicated when a change in the conditions of confinement creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman, 83 F.3d at 972; see also, Sandin v. Connor, 515 U.S. 472, 484 (1995) (explaining that a prisoner cannot sustain a due process claim unless he can first show that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life"). "This standard has [also] been applied in cases involving procedural due process claims by plaintiffs who have been involuntarily civilly committed as sexually violent persons." Flores v. Moser, No. 16-cv-1860-SDM-KMM, 2019 WL 2016789, at *7 (D. Minn. Jan. 7, 2019); see also, Linehan v. Johnston, No. 18-cv-03483-WMW-KMM, 2019 WL 6879366, at *3–4 (D. Minn. Nov. 26, 2019), report and recommendation adopted by 2019 WL 6873984 (D. Minn. Dec. 17, 2019) (applying standard).

Accordingly, for Plaintiff to plausibly state a procedural due process claim, he must allege facts that demonstrate his transfer from Tier 3 to Tier 2 imposed dramatic departures from the basic conditions and ordinary incidents of being civilly committed to the MSOP. Plaintiff alleges that he lost certain privileges, including the privilege of possessing his Xbox, for a relatively short period of time due to his receipt of multiple Behavioral Expectation Reports. However, no where in his Complaint does Plaintiff challenge his receipt of the Behavioral Expectation Reports, nor does he dispute that he engaged in the behaviors that led to the Behavioral Expectation Reports. Plaintiff merely contends that he was entitled to additional process before and after being moved to Tier 2, such as a hearing and opportunity to appeal the decision.

"Federal courts have repeatedly recognized that unwanted prison transfers, segregated confinement, lost privileges, and lost opportunities for work, education and rehabilitation, are *normal and expectable experiences of prison* life, and they are not of 'atypical and significant hardship' that implicate constitutionally protected liberty interest." Olhausen v. Fabian, No. 7-cv-4593 (MJD/JSM), 2008 WL 2042613, at *5 (D. Minn. May 12, 2008) (compiling cases) (emphasis in original); see also, Linehan, 2019 WL 6879366, at *3–4 ("[T]he Due Process Clause does not protect [the plaintiff's] desire to obtain a placement in a more permissive environment."). Moreover, relevant analagous case law establishes that MSOP patients have no protected interest in employment while civilly committed in the MSOP. See, Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, *15 (D. Minn. Sept. 30, 2014); see also, Perseke v. Moser, No. 16-cv-557 (PJS/LIB), 2016 WL 6275191, at *4 (D. Minn. Sept. 26, 2016), report and recommendation adopted by 2016 WL 6246761 (D. Minn. Oct. 25, 2016) (finding that MSOP patients have no protected interest in employment while civilly committed to the MSOP).

Therefore, this Court finds Plaintiff's Complaint fails to allege any facts that plausibly suggest he has been subjected to the type of deprivations required to implicate a constitutionally protected liberty interest. See, e.g., Linehan, 2019 WL 6879366, at *3–4 (finding no liberty interest where an MSOP patient was placed in restricted status and lost vocational privileges); Flores, 2019 WL 2016789, at *7 (finding no liberty interest was implicated where an MSOP patient was placed, without a hearing, in a unit where he was denied certain privileges). As such, any due process claim in his Complaint related to Plaintiff's reassignment from Tier 3 to Tier 2 necessarily fails as plead.

Having established that no constitutionally protected liberty interest was implicated when Plaintiff was moved from Tier 3 to Tier 2, the Court will next consider whether Plaintiff's due

process rights were violated when Plaintiff was required to send his Xbox away from the MSOP's Moose Lake facility following his transfer.

"There is no Minnesota statute giving civilly committed individuals generally, or Program detainees, specifically, the right to possess all of their property." Beaulieu v. Ludeman, 07-CV-1535 (JMR/JSM), 2008 WL 2498241, at *16 (D. Minn. June 18, 2008). "With respect to possession of personal property, courts have regularly and uniformly found that both prisoners and civil detainees have only limited rights to possession of specific articles of property while detained—rights that fall short of the 'protected property interests' implicated by the Due Process Clause." Miles v. Johnson-Piper, No. 19-CV-1078-WMW-KMM, 2020 WL 2362044, at *8–9 (D. Minn. Jan. 23, 2020), report and recommendation adopted in part by 2020 WL 1330028 (D. Minn. Mar. 23, 2020); see also, Banks v. Jesson, No. 11-1706 (MJD/JJK), 2012 WL 13094534, at *9 (D. Minn. Jan. 13, 2012), report and recommendation adopted by 2016 WL 3566207 (D. Minn. June 27, 2016) (finding that an MSOP patient had "no protected liberty or property interest in possessing personal items that are deemed prohibited contraband by the MSOP . . . .").

Here, Plaintiff has alleged that MSOP patients "in tier 3 or above may possess <u>one</u> approved video game system." (Compl. [Docket No. 1] ¶ 10 n.2). Possession of a video game system is not permitted while on Tier 2. (See, Id. ¶¶ 10–11). Thus, pursuant to MSOP policies, Plaintiff was not permitted to possess the Xbox after being moved to Tier 2, and he was required to send the Xbox out of the Moose Lake facility. (See, e.g., Id. ¶ 11). In similar situations, other courts in this District have repeatedly found that no constitutionally protected liberty or property interest was implicated. See, e.g., Miles, 2020 WL 2362044, at *8–9 (finding no protected liberty or property interest was implicated where an MSOP patient was required to send personal property out of the MSOP facility because he was not allowed to possess the property while in restrictive housing); Flores,

17

2019 WL 2016789, at *7 (finding that "allegations concerning limited recreation time, inability to order certain food items, and proscriptions on possessing some electronics do not implicate any liberty or property interest protected by the Constitution"); Banks v. Jesson, No. 11-cv-1706 (SRN/JSM), 2016 WL 3566207, at *3–4, 9–10 (D. Minn. June 27, 2016) (finding that MSOP's policies which prevented an MSOP patient from possessing "the personal computer of his choice or videogame systems and limiting his access to the internet and email" did not implicate a protected liberty or property interest); Beaulieu, 2008 WL 2498241, at *17 (finding that MSOP patients did not "have a constitutionally protected property interest in the possession of their 20-inch televisions, so as to invoke procedural due process protections").

Therefore, this Court finds that Plaintiff's Complaint, as plead, does not identify any constitutionally protected liberty interest that was implicated when Plaintiff was required to send his Xbox away from the MSOP's Moose Lake facility.

Even broadly construing Plaintiff's Complaint, he identifies no constitutionally protected liberty or property interest. Without a protected interest, his procedural due process claims fail. See, Bealieu, 690 F.3d at 1047 (quoting Wilkinson, 545 U.S. at 221). Accordingly, the Court finds that Plaintiff could not obtain relief on his due process claims as plead, and as such, the Court recommends **DISMISSING without prejudice** Plaintiff's procedural due process claims for monetary damages against the named Defendants in their individual capacities, as well as, his procedural due process claim for injunctive and declaratory relief against Defendants in their official capacities.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 13], be **GRANTED** and Plaintiff's Complaint, [Docket No. 1], in its entirety, be **DISMISSED without prejudice**.

Dated: July 23, 2020

s/Leo I. Brisbois
The Honorable Leo I. Brisbois
U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).