UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

LARRY F. DEAN,

    Plaintiff,

v.

NANCY JOHNSTON and LAURIE SEVERSON, *in their individual and official capacities*,

    Defendants.

No. 19-3186 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**

---

Larry F. Dean, MSOP, 1111 Highway 73, Moose Lake, MN 55767, *pro se*.

Molly Beckius, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1400, St. Paul, MN 55101, for defendants.

Plaintiff Larry F. Dean, who is civilly committed in the Minnesota Sex Offender Program ("MSOP"), filed a Complaint against Nancy Johnston, Executive Director of MSOP, and Laurie Severson, a Unit Director at MSOP, alleging constitutional violations under the Fourth and Fourteenth Amendments. The Court previously granted Defendants' motion to dismiss the Complaint and Dean's motion for leave to amend the Complaint. Dean filed his Amended Complaint on January 22, 2021, and Defendants again moved to dismiss, pursuant to Rule of Civil Procedure 12(b)(6). Because the Court finds that Dean has failed to state colorable claims for violations of his constitutional rights, the Court will dismiss Dean's Amended Complaint.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

Plaintiff Larry F. Dean is involuntarily committed to the MSOP and resides at the MSOP facility in Moose Lake, Minnesota.  Dean filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants Nancy Johnston, Executive Director of MSOP, and Laurie Severson, Unit Director at the Moose Lake facility, violated his Fourth Amendment right to be free of illegal search and seizure and his Fourteenth Amendment due process rights through their implementation of a "Tier System" behavioral program and related policies.  (Am. Compl. ¶¶ 7–10, Jan. 22, 2021, Docket No. 37.)

The System is comprised of three tiers; detainees begin on Tier 1 when they first arrive at MSOP and may advance by demonstrating "positive prosocial behaviors" and "utiliz[ing] skills that aid in successful reintegration."  (Decl. of Molly Beckius ¶ 2, Ex. 1 ("MSOP Policy 215-5014") at 1, Feb. 5, 2021, Docket No. 43.)[1]  Tier levels are based upon detainees' compliance with facility rules and demonstration of positive social behaviors with other members of the MSOP community.  (*Id.* 1–2.)  Detainees on Tier 3 are afforded additional freedoms and privileges, including access to programming, freedom of movement, work opportunities, and the ability to possess an approved video game system.  (Compl. ¶¶ 10 n.2, 11).  Tier levels may decrease as a result of behavioral

---

[1] The Complaint cites to MSOP Policies # 215-5014 "Client Tier Level System," and # 420-5250(d) "Property List."  (Am. Compl. ¶ 18 n.4.)  These policies, though not appended to the Complaint, are "necessarily embraced by the complaint," and may be considered on a motion to dismiss. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

infractions or a pattern of behavior that does not comport with the expectations of the tier level; when a detainee's tier level decreases, they no longer have access to the privileges associated with Tier 3 until they have regained Tier 3 status. (Compl. ¶¶ 10–11; MSOP Policy 215-5014 at 2–3.)

Dean alleges that Severson notified him on May 21, 2019, that he would be moved from Tier 3 to Tier 2 due to several disciplinary infractions for which Dean received Behavioral Expectation Reports ("BERs"), including lying and misrepresentation, assault, disorderly conduct, and threatening others. (*Id.* ¶ 11.) As a result of his tier reassignment, Dean was required to forfeit his Xbox 360 gaming console. (*Id.* ¶¶ 10–11.) Dean alleges that revocation of his Tier 3 status was final and unappealable, pursuant to MSOP Policy # 215-5014. (*Id.* ¶ 18.) Dean was informed that he would be allowed to purchase a new gaming system, controllers, and games when he had again obtained and retained Tier 3 status for 90-days. (*Id.* ¶ 17.) Dean asserts that it took him years to save enough money to purchase his original Xbox system, controllers, and games and that he cannot afford to purchase a new system because he has a fixed income, and the only MSOP-approved vendor has ceased selling the desired Xbox units to MSOP detainees. (*Id.* ¶¶ 10 n.1, 17.)

Dean notes that the Tier System "purports to emphasize positive reinforcements rather than punishment as a means of controlling behavior," (*id.* ¶ 10), but Dean alleges that the program is punitive, arbitrary, capricious, created and implemented with animus, serves no therapeutic purpose, and does not provide adequate due process protections,

(*id*. ¶¶ 8–9).  Dean alleges that the Tier System regulates every dimension of his life at MSOP, including visitation, receipt of packages, schedule, recreation, and personal belongings.  (*Id.* ¶ 9.)

To advance through the Tier System, MSOP detainees must meet certain behavioral expectations and avoid disciplinary infractions, but Dean alleges that evaluations of behavior are based on subjective judgments of MSOP staff and that minor infractions may result in a detainee's demotion to a lower tier and loss of property without due process.  (*Id.*)  Dean further alleges that the Tier System has never been evaluated by a psychologist or psychiatrist qualified to assess its effects, and characterizes the system as "an institutional experiment."  (*Id.* ¶¶ 10, 12–14.)  Dean asserts that the Tier System is demoralizing and counter-therapeutic for detainees and produces stress and adverse psychological impacts related to detainees' fears that even the most basic privileges may be withdrawn without recourse.  (*Id.* ¶ 14.)

## II.   PROCEDURAL HISTORY

Dean initially filed a Complaint against Defendants Johnston and Severson on December 27, 2019, asserting claims for illegal search and seizure in violation of the Fourth Amendment, as well as Fourteenth Amendment equal protection and procedural due process violations.  (Compl., Dec. 27, 2019, Docket No. 1.)  Defendants moved to dismiss with prejudice for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1),

and for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). (1st Mot. Dismiss, Apr. 20, 2020, Docket No. 13.)

Magistrate Judge Leo Brisbois issued a Report and Recommendation ("R&R") recommending that the Court dismiss Dean's Complaint without prejudice. (R&R at 12, 12 n.5, 18, July 23, 2020, Docket No. 23.) Dean filed objections to the R&R on August 6, 2020, (Pl.'s Obj., Aug. 6, 2020, Docket No. 24), and on October 1, 2020, requested leave to amend his Complaint, (Mot. Leave Am. Compl., Oct. 1, 2020, Docket No. 28).

The Court adopted the R&R, finding that Dean did not plausibly allege violations of his Fourth Amendment rights related to the seizure of his Xbox, did not establish an equal protection claim, and did not identify a constitutionally protected liberty or property interest necessary for an actionable due process claim. *Dean v. Johnson*, No. 19-3186, 2020 WL 6867409, at *2–3 (D. Minn. Nov. 23, 2020). The Court dismissed the Complaint without prejudice and granted Dean's motion for leave to amend. *Id.* at *3.

On January 22, 2021, Dean filed an Amended Complaint, which omits Dean's original equal protection claim but retains Dean's claims that MSOP violated his rights to due process and freedom from unreasonable search and seizure. (*See* Am. Compl. ¶ 21.) The Amended Complaint also includes supplemental factual allegations about Dean's tier demotion and resulting forfeiture of his Xbox system, and asserts additional legal conclusions related to MSOP's Tier System and related policies. (*Id.* ¶¶ 7–18.) Dean's Amended Complaint requests injunctive and declaratory relief. (*Id.* at 19.) Defendants

have filed a second motion to dismiss, arguing that Dean's Amended Complaint fails to state a claim pursuant to Rule 12(b)(6). (2nd Mot. Dismiss, Feb. 5, 2021, Docket No. 40.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (quotation omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court liberally construes a document filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## II.     FOURTH AMENDMENT CLAIMS

As an involuntarily civilly committed person, Dean retains his Fourth Amendment right to be free from unreasonable searches and seizures, a right which is analogous to the rights afforded to pretrial detainees. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012). A gaming system, like a television set, "is a personal effect protected by the Fourth Amendment." *Id.* at 1034 (quotation omitted). A seizure of property in violation of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Id.* (quotation omitted). To determine whether a seizure is constitutionally reasonable, the Court must balance the individual's Fourth Amendment interest against the governmental interest in the intrusion. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 483 (8th Cir. 2010).

Dean asserts several conclusory allegations that MSOP officials have no legitimate interest in the seizure of gaming systems and that they cannot explain how seizure of gaming systems serves a therapeutic purpose or is necessary to ensure the safety of security of the institution. However, the facts alleged in the Amended Complaint establish that the reduction in Dean's tier status was a direct result of his own multiple behavioral infractions, including lying, misrepresentation, assault, disorderly conduct, and threatening others. The Amended Complaint is also clear that, pursuant to MSOP policy, detainees on Tier 2 are not permitted to possess personal gaming equipment. In its prior Order, the Court recognized that MSOP administrators have a strong interest in

facilitating compliance with institutional norms, maintaining the safety of staff and other detainees, and incentivizing positive social behaviors. *Dean*, 2020 WL 6867409, at *2 (citing *Serna v. Goodno*, 567 F.3d 944, 953 (8th Cir. 2009); *Senty-Haugen v. Goodno*, 462 F.3d 876, 888 (8th Cir. 2006)). The incentives and disincentives embedded in the Tier System are one way of accomplishing these objectives. *See also*, *Beaulieu*, 690 F.3d at 1035 (finding policy mandating seizure of MSOP detainees' personal televisions reasonable due to MSOP's interests in maintaining security and order and prohibiting access to contraband).

Taking Dean's allegations as true and drawing reasonable inferences in his favor, the Court finds that Dean has failed to allege factual content sufficient to permit an inference that MSOP's seizure of Dean's Xbox was unreasonable under the circumstances. Dean has therefore failed to state a claim for violation of his Fourth Amendment rights.

### III.   FOURTEENTH AMENDMENT DUE PROCESS CLAIM

Dean alleges that he is entitled to due process protections related to the downward adjustment of his tier status and his interest in retaining his Xbox. Dean asserts that he was unable to appeal his tier status modification, that he received no explanation for why his gaming console was a threat to the institution's safety and security, and that there is no common-sense connection between the policy requiring forfeiture of gaming consoles and a legitimate therapeutic or institutional justification. Dean further asserts that the Tier System is impermissibly punitive in violation of the Fourteenth Amendment.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011) (quotation omitted).  If a plaintiff asserts a cognizable protected liberty or property interest, then the Court "consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in an erroneous deprivation, and [MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen*, 462 F.3d at 886 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)).

### A. Liberty & Property Interests

As a civilly detained person, Dean retains protected liberty interests, though his interests are necessarily constrained due to the circumstances of his confinement. *See id*. In its prior Order, the Court found that Dean had failed to identify any constitutionally protected liberty interest resulting from his reassignment from Tier 3 to Tier 2. *Dean*, 2020 WL 6867409, at *3. Dean does not dispute in either version of his Complaint that he committed the behavioral infractions for which he received the BERs and downward adjustment in his tier status.  In his Amended Complaint, Dean fails to allege any additional facts that lead the Court to a reasonable inference that Dean was entitled to maintain Tier 3 status despite his behavior, or that the Tier System itself fundamentally

violates a protected liberty interest. The Court therefore finds that Dean has not established that he possesses a protected liberty interest related to his tier status.

Dean also asserts that due process rights attach to his property interest in his Xbox system. As established above in relation to his Fourth Amendment claim, Dean's personal property rights may be reasonably constrained in accordance with MSOP's therapeutic or policy considerations. *See Beaulieu*, 690 F.3d at 1047; *Banks v. Jesson*, No. 11-1706, 2012 WL 13094534, at *11 (D. Minn. Jan. 13, 2012). To the extent that possessing an Xbox is prohibited for persons with Tier 2 status, Dean cannot assert a constitutionally protected property interest in the Xbox while he is on Tier 2. *See Banks*, 2012 WL 13094534, at *11 ("As in the case of personal computers, Plaintiff has no constitutional right to electronic gaming systems or satellite radio devices."). The Court therefore concludes that the Amended Complaint has not cured the deficiencies identified in Dean's original Complaint, and finds that Dean has failed to assert a protected liberty or property interest giving rise to a cognizable due process claim.

### B.     Punitive Conditions of Confinement

Dean repeatedly alleges in the Amended Complaint that the Tier System policy and associated regulations are impermissibly punitive. Civilly committed individuals, like pretrial detainees, may not be subject to punishment under the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982) (noting that civilly confined persons "may not be punished at all[.]"). To determine whether conditions of confinement are

improperly punitive the Court considers whether the conditions were "'imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).

Although Dean's Amended Complaint makes several conclusory assertions that the Tier System policy and the Xbox forfeiture requirement are punitive and lack a therapeutic rationale, Dean has not alleged facts that demonstrate either an expressed intent by MSOP officials to punish him or that MSOP lacks a legitimate basis for these policies. *See id.* As noted above, MSOP administrators have a strong interest in facilitating compliance with institutional norms and promoting social behaviors that do not endanger their staff or other detainees. *See Serna*, 567 F.3d at 953. Dean alleges that the Tier System purports to emphasize positive reinforcements rather than punishment to incentivize behavior; the Tier System policy provides that it supports and reinforces "positive prosocial behaviors by offering identified opportunities to help clients utilize skills that aid in successful reintegration." *See* MSOP Policy # 215-5014. The Court finds that these goals reflect legitimate institutional interests and Dean has not alleged any facts to indicate an alternative or illegitimate basis for this policy.

With regard to the Xbox forfeiture, the Court finds that MSOP also has an interest in preventing Xboxes that have been sent off premises from being returned to the facility, where the consoles could easily become vessels for smuggling or contraband. *See, e.g.*,

*Bell*, 441 U.S. at 551 (finding restrictions on hardback books permissible to limit smuggling); *Ivey v. Mooney*, No. 05-2666, 2008 WL 4527792, at *9 (D. Minn. Sept. 30, 2008) (discussing contraband images seized from detainee's hard drive).  However, the Court is skeptical that requiring permanent forfeiture of detainees' Xboxes that have been removed is necessary or serves any legitimate institutional interest.

The Court is sympathetic to the financial and personal strain associated with the loss of an item that is clearly of significant value to Dean and other MSOP detainees.[2]  The Court therefore encourages MSOP to consider a more tailored policy to address their security concerns—for instance, by storing the forfeited devices onsite to be returned once the detainee has reestablished Tier 3 status, rather than requiring permanent forfeiture.  Such a policy might even prove to be more of an incentive to reestablish Tier 3 status.  Nevertheless, the Court finds that its concerns about the particulars of the Xbox forfeiture policy do not rise to a constitutional violation without an established liberty or property interest or factual content to suggest that the requirement was imposed for the purpose of punishment.  *Karsjens*, 988 F.3d at 1052.

Dean's Amended Complaint acknowledges the stated therapeutic goals of the Tier System and makes clear that access to gaming devices is a strong incentive for MSOP detainees to advance their treatment and elevate their tier status.  Although there are

---

[2] The Court has previously addressed the MSOP gaming console vendor policy.  *See Hayzlett v. Johnson*, No. 20-877, 2021 WL 428963, at *1–3 (D. Minn. Feb. 8, 2021).

feasibly less-restrictive alternatives, Dean's conclusory statements that the policy is punitive do not make up for the Amended Complaint's dearth of specific facts to establish either that MSOP possesses punitive motivations or that the policy lacks a legitimate therapeutic justification. As such, Dean has not stated a plausible claim for violation of his Fourteenth Amendment right to due process.

## CONCLUSION

The Court finds that Dean has not alleged sufficient factual content to permit an inference that MSOP's Tier System or its Xbox forfeiture policy violated his constitutional rights or are impermissibly punitive, and neither has he established a liberty or property interest in his tier status and associated privileges. Dean has similarly failed to allege that MSOP's seizure of his Xbox was unreasonable under the Fourth Amendment. Because Dean has not stated colorable claims for violations of his constitutional rights, the Court will dismiss this action.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 40] is **GRANTED**; and

2. Plaintiff's Amended Complaint [Docket No. 37] is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 18, 2021
at Minneapolis, Minnesota.

                                               JOHN R. TUNHEIM
                                                  Chief Judge
                                       United States District Court